## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY


JACQUES M.,[1]

      Plaintiff,

                              **Case No. 2:21-cv-1461**

   v.                        **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.


## <u>OPINION AND ORDER</u>

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Jacques M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

1

## I.      PROCEDURAL HISTORY

On June 9, 2017, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since December 31, 2015. R. 75, 88, 224−27, 236−44. The applications were denied initially and upon reconsideration. R. 18, 129−35, 140−45. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 147−50. Administrative Law Judge ("ALJ") Donna Krappa held a hearing on June 12, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 33−74. In a decision dated September 29, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 31, 2015, Plaintiff's alleged disability onset date, through the date of that decision. R. 18−28. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 4, 2020. R. 4−9. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 27, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.[3] On May 28, 2021, the case was reassigned to the undersigned. ECF No. 9. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

4

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 38 years old on his alleged disability onset date. R. 27. He met the insured status requirements of the Social Security Act through March 31, 2020. R. 20. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 31, 2015, his alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: major depressive disorder; anxiety; adjustment disorder; history of substance abuse; and diabetes with neuropathy. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21–23.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 23–27. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a driver helper. R. 27.

7

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 70,000 jobs as a labeler, approximately 10,000 jobs as a bagger, and approximately 90,000 jobs as an inspector/packer—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 28. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 31, 2015, his alleged disability onset date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps four and five and apparently asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 14.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

Dr. Jocelyn Fierstien[4] conducted an initial review of Plaintiff's medical records on behalf of the state agency on September 11, 2017. R. 76−87, 89−100. Dr. Fierstien found that Plaintiff's depressive, bipolar and related disorders, as well as Plaintiff's anxiety and obsessive-compulsive disorders, did not meet or medically equal Listings 12.04 or 12.06. R. 80−81, 94. In addressing the paragraph B criteria of those listings, Dr. Fierstien concluded that Plaintiff had moderate limitations in his ability to interact with others; concentrate, persist, or maintain pace; and adapt

---

[4] This state agency consultant's credentials do not appear in the record. R. 76−87, 89−100. The ALJ refers to this individual as "Dr. Jocelyn Fierstien[,]" R. 26, and for ease of reference, the Court will do so as well.

or manage himself, but only a mild limitation in his ability to understand, remember, or apply information. R. 81, 94. Under the heading "PRT [Psychiatric Review Technique] – Additional Explanation," Dr. Fierstien stated "[s]ee MRFC." *Id.* Dr. Fierstien also stated that Plaintiff's medically determinable impairments could reasonably be expected to produce pain or other symptoms and that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by the objective medical evidence alone. R. 82, 95. In assessing Plaintiff's mental RFC, Dr. Fierstien addressed Plaintiff's understanding and memory limitations, opining that Plaintiff was not significantly limited in his ability to remember locations and work-like procedures, but was moderately limited in his ability to understand and remember very short and simple i, as well as detailed, instructions. R. 83, 96. Dr. Fierstien explained her opinions as follows:

> CE: clmt. was a[b]le to recall 3 items immediately, 1/3 items after a five minute delays; was able to recall 3 digits forwards and 2 digits backwards; able to spell WORLD backwards; presents as oriented, adequate fund of knowledge; noted to 2-3x per week, records from High Point indicate clmt. hears voices.

*Id.* In addressing Plaintiff's "sustained concentration and persistence limitations[,]" Dr. Fierstien opined that Plaintiff was moderately limited in his abilities to maintain attention and concentration for extended periods; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted by them; to make simple work-related decisions; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but was not significantly limited in his abilities to carry out very short and simple instructions; carry out detailed instructions; and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 83, 96. As for Plaintiff's limitations in his ability to interact with others,

9

Dr. Fierstien opined that Plaintiff was moderately limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but was not significantly limited in his abilities to interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. R. 84, 97. As for Plaintiff's ability to adapt, Dr. Fierstien opined that Plaintiff was moderately limited in his abilities to respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others, but was not significantly limited in his ability to travel in unfamiliar places or to use public transportation. *Id.* Under the heading "MRFC – Additional Explanation," Dr. Fierstien further explained as follows:

> Clmt. received a CE from Dr. Yalkowsky, dx with Adjustment Disorder with anxiety and depressed mood, moderate impact. Clmt. had been prescribed Cymbalta, Haloperidol, Trazodone, and has been in tx through High Point, indicates tx since 10/16. MSE: clmt. presents as pleasant, cooperative, logical, coherent, goal directed, oriented, adequate fund of knowledge, some difficulties with concentration and slurred speech noted. Records from High Point, notes from 5-6/17 indicate working on managing anxiety and stress, relaxation techniques, coping with pain and sobriety, with presentation as alert, cooperative, good judgment, noted to have Major Depressive Disorder, severe with psychotic features, as well as anxiety. ADL information indicates clmt. is able to perform tasks such as laundry, cooking, cleaning, adequate independent travel. Based on available psych information, clmt. is able to perform basic tasks, sustain CPP, relate and adapt to low stress or low contact simple routine work.

*Id.* According to Dr. Fierstien, Plaintiff was not disabled. R. 86, 99.

Erika Gilyot-Montgomery, PsyD., reviewed Plaintiff's medical records upon reconsideration for the state agency on January 16, 2018. R. 102−14, 116−28. Dr. Gilyot-Montgomery agreed with Dr. Fierstien that Plaintiff did not meet or medically equal Listings 12.04 or 12.06. R. 107−08, 121−22.  Although she also agreed with Dr. Fierstien that Plaintiff

had moderate limitations in his abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage himself, Dr. Gilyot-Montgomery also found a moderate limitation in Plaintiff's ability to understand, remember, or apply information. *Id*. Under the heading "PRT– Additional Explanation," Dr. Gilyot-Montgomery explained:

> Clmt is a male, age 39, alleged major depression, severe w psychotic features, GAD and physical conditions. Clmt reported rx Cymbalta and Trazodone. AOD 12/31/15. On recon, Clmt does not allege any worsening or new mental impairment and continues to take rx psych meds. Initial Psychiatric Eval 10/13/17 Clmt has been attending program since 10/2016 for Major Depression w psychotic features and GAD. Rx Cymbalta, Haldol, and Trazodone. Clmt reported no psych meds in 2 weeks because she [sic] ran out. Clmt declined current drug/alcohol use. Restart meds. Alert, cooperative, normal speech, depressed affect, goal directed thought, occasional SI passive w no intent or plan, denied HI, good judgment, good abstraction, and present hallucinations. Clmt attending and participating in intensive outpt tx. Clmt did not take UDS. 12/18/17 Clmt attended groups, participated and made progress towards goals. Clmt reported taking psych meds and feeling well.

> Psych CE 9/6/17 from Dr. Yalkowsky, dx with Adjustment Disorder with anxiety and depressed mood, moderate impact. Clmt had been prescribed Cymbalta, Haloperidol, and Trazodone. Clmt has been in tx through High Point, indicates tx since 10/2016. MSE: Clmt presents as pleasant, cooperative, logical, coherent, goal directed, oriented, adequate fund of knowledge, some difficulties with concentration and slurred speech noted. Records from High Point, notes from 5/2017-6/2017 indicate working on managing anxiety and stress, relaxation techniques, coping with pain and sobriety, with presentation as alert, cooperative, good judgment, noted to have Major Depressive Disorder, severe with psychotic features, as well as anxiety. AOL information indicates Clmt is able to perform tasks such as laundry, cooking, cleaning, and adequate independent travel. Based on available psych information, Clmt is able to perform basic tasks, sustain CPP, relate and adapt to low stress or low contact simple routine work.

> MER supports Clmt's alleged MDIs. Clmt is participating in outpt tx 3x week to learn to manage his psych sxs and sustain sobriety from substance use. Clmt's psych sxs are noted as improved w medication. Clmt reported being compliant overall, participating in group tx, and learning new coping skills. Clmt is independent w day to day activities and self-care. MSE is noted as overall intact w mild deficits in sustained concentration and working memory. Recalled 1 of 3 objects after delay, adequate FOK, intact basic mental math, digit span 3DF / 2DB, difficulty w serial 7s, unable to spell world backward, and some insight. Clmt w longstanding mental illness secondary to difficulty childhood, psych sxs exacerbated by chronic pain sxs, w overall moderate impact. The severity of Clmt's

> alleged limitations resulting from mental impairments and cognitive deficits are partially consistent w evidence in file. Clmt is able to manage funds. Clmt retains the mental and cognitive capacity for simple, unskilled tasks given superficial social interaction, occasional changes in routine and fast pace tasks likely to increase psych sxs. MRFC warranted.

R. 108, 122. According to Dr. Gilyot-Montgomery, Plaintiff's medically determinable impairments could reasonably be expected to produce his symptoms of pain and limitations in understanding and memory, in his ability to sustain concentration and persistence, in his social interactions, and in his ability to adapt and that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his symptoms were substantiated by the objective medical evidence alone. R. 109, 123. In assessing Plaintiff's mental RFC, Dr. Gilyot-Montgomery agreed with Dr. Fierstien that Plaintiff was not significantly limited in his ability to remember locations and work-like procedures and was moderately limited in ability to understand and remember detailed instructions, but found that Plaintiff was not significantly limited in his ability to understand and remember very short and simple instructions. R. 110, 124. In explaining these limitations, Dr. Gilyot-Montgomery stated that Plaintiff "is capable of simple, unskilled tasks." *Id.* In addressing Plaintiff's "sustained concentration and persistence limitations[,]" Dr. Gilyot-Montgomery opined that Plaintiff was moderately limited in his abilities to carry out detailed instructions;  maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but was not significantly limited in his abilities to carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to make

12

simple work-related decisions; and to make simple work-related decisions. R. 110−11, 124−25. According to Dr. Gilyot-Montgomery, Plaintiff "is capable of simple, unskilled tasks given superficial social interaction and fast pace tasks likely to increase psych sxs [psychological symptoms]." R. 111, 125. As to Plaintiff's social interaction limitations, Dr. Gilyot-Montgomery found that Plaintiff was moderately limited in his abilities to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but was not significantly limited in his abilities ask simple questions or request assistance and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id*. In further explaining these limitations, Dr. Gilyot-Montgomery stated that Plaintiff "would do best w *superficial* social interaction w general public and others in a work setting." *Id*. (emphasis added). As to Plaintiff's adaptation limitations, Dr. Gilyot-Montgomery opined that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting, but was not significantly limited in his abilities be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. *Id*. Under the heading "MRFC – Additional Explanation," Dr. Gilyot-Montgomery explained:

> See PRT for rationale. A review of the prior assessment seems reasonable considering available evidence in file at the time. On recon, Clmt alleged no worsening or new mental impairments. Clmt continues to participate in outpt tx 3x week, and continues to take rx psych meds w good response. Clmt continues to improve his ability to manage psych sxs and learn to cope w/o use of substances. Clmt continues to experience moderate limitations in fx, but to a lesser degree. MSE and PRW supports Clmt is capable of simple, unskilled tasks.

*Id*. Dr. Gilyot-Montgomery also concluded that Plaintiff was not disabled. R. 113, 127.

## V.    DISCUSSION

Plaintiff challenges, *inter alia*, the ALJ's RFC determination. *Plaintiff's Brief*, ECF No. 13, pp. 8–11; *Plaintiff's Reply Brief*, ECF No. 15. Plaintiff specifically argues that the ALJ erred in failing to include a restriction addressing Plaintiff's moderately limited ability to, *inter alia*, complete a normal workday. *See id*. This Court agrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ must assess "the nature and extent" of a claimant's mental and/or physical limitations "and then determine [that claimant's RFC] for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b), (c), 416.945(b), (c); *see also* SSR 96-8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). The ALJ must consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

14

In making these findings, the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704−05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705−06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter*, 642 F.2d at 705). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209−10 (3d Cir. 2019) ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Cotter*, 642 F.2d at 706−07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In addition, the Court notes that state agency physicians are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler*, 667 F.3d at 361 ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the exertional demands of light work as defined under the Regulations; specifically, he is able to: lift/carry 20 lbs. occasionally and 10 lbs. frequently; stand/walk for 6 hours in an eight hour work day; sit for 6 hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restriction given. The claimant requires ready access to a restroom. Furthermore, as to the mental demands of work, I find that the claimant is able to perform jobs: that are simple and repetitive; that require only an occasional change in the work setting; and that require only occasional contact with supervisors, co-workers, and/or general public.

R. 23.

In making this determination, the ALJ specifically considered the opinions of the state agency reviewing psychological consultants, Dr. Fierstien and Dr. Gilroy-Montgomery, as follows:

> A DDS opinion was provided by Dr. Jocelyn Fierstien (Exhibit 2A/4A). While Dr. Fierstien did not have the opportunity to directly examine the claimant, Dr. Fierstien had an opportunity to review the record as it appeared on the date the opinion was made. Specifically, Dr. Fierstien opined the claimant had mild restrictions understanding, remembering, or applying information (Id. at 6). In her opinion, he had moderate difficulties with interacting with others, concentration, persistence, maintain pace, adapting, or managing himself. He was able to perform tasks such as laundry, cooking, cleaning, adequate independent travel (Id. at 9). Based upon available information, he was able to perform basic tasks, sustain concentration, persistence, maintain pace, relate and adapt to low stress or low contact simple routine work. While somewhat consistent with the record, I determined the claimant had further restrictions given the record as a whole. Overall, this assessment was persuasive to the extent it was consistent with the residual functional capacity above.
>
> A DDS opinion was provided by a psychologist, Erika Gilyot-Montgomery, Psy.D. (Exhibit 6A/8A). While Dr. Gilyot-Montgomery did not have the opportunity to directly examine the claimant, Dr. Gilyot-Montgomery had an opportunity to review the record as it appeared on the date the opinion was made. Specifically, Dr. Gilyot-Montgomery opined the claimant had moderate restrictions understanding, remembering, or applying information (Id. at 7). He had moderate difficulties with interacting with others, concentration, persistence, maintain pace, adapting, or managing himself. He was capable of simple, unskilled tasks (Id. at 9). He was capable of simple, unskilled tasks given *superficial social interaction* and fast pace tasks likely to increase his psychological symptoms (Id. at 10). *He would do best with superficial social interaction with general public and others in a work setting.* He would do best with occasional changes in routine and clear expectations. This opinion was generally consistent with the record as a whole. Overall, this assessment was persuasive to the extent it was consistent with the residual functional capacity above.

R. 26 (emphasis added).

As previously noted, Plaintiff challenges the RFC determination, arguing, *inter alia*, that it failed to account for his moderately limited ability to complete a normal workday and that the ALJ failed to explain this omission. *Plaintiff's Brief*, ECF No. 13, pp. 8–11; *Plaintiff's Reply Brief*, ECF No. 15. This Court agrees. The ALJ specifically found that Dr. Gilroy-Montgomery's

17

opinions were "generally consistent with the record as a whole" and "persuasive to the extent it was consistent with the residual functional capacity above." Yet it is not clear to the Court why the ALJ failed to incorporate into the RFC that doctor's opinion that Plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 23, 26, 110, 124−25. Notably, the ALJ never explained why he implicitly rejected these limitations, nor does the RFC found by the ALJ contain any accommodation for these limitations. R. 21, 26. Although an ALJ is free to weigh the medical opinions in the record and to determine whether and to what extent those opinions are to be credited, an ALJ must in all events explain his reasoning in that regard. *Cotter*, 642 F.2d at 704–05; *Fargnoli,* 247 F.3d at 42; *Morales*, 225 F.3d at 317; *see also Jones,* 364 F.3d at 505 (providing that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"). Similarly, an ALJ may not reject evidence for no reason or the wrong reason. *Sutherland*, 785 F. App'x at 928. Where, as here, the ALJ's failure to include in Plaintiff's RFC—or to explain the omission from Plaintiff's RFC— limitations relating to moderate limitations in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods cannot be viewed as harmless. *See H.G. v. Comm'r of Soc. Sec.*, No. CV 20-7560, 2021 WL 3706724, at *2–3 (D.N.J. Aug. 20, 2021) (remanding where "the ALJ overlooked a key finding" by reviewing state agency physicians, namely, that the plaintiff has a moderate limitation to the ability to the ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances, and that "the reviewers agreed that Plaintiff has a moderate limitation to

the ability to complete a normal workday and workweek without interruptions from

psychologically-based symptoms"); *Moeller v. Kijakazi*, No. 1:20-CV-00571, 2021 WL

3207247, at *8–9 (M.D. Pa. July 29, 2021) (remanding case where "it is unclear how the ALJ

accounted for Dr. Murphy's opinion that Ms. Moeller is moderately limited in her 'ability to

complete a normal workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods'" and finding that if the ALJ had included this limitation in the RFC, "it could have made

a difference as to whether Ms. Moeller can engage in sedentary work. It also could have altered

the vocational expert's analysis of the type of work Ms. Moeller can perform") (internal citations

omitted); *Taylor v. Comm'r of Soc. Sec.*, 83 F. Supp. 3d 625, 627–28 (M.D. Pa. 2015)

(remanding where the ALJ "seemingly adopted some of the limitations suggested by Drs.

Mrykalo and Kelsey into his RFC and did not adopt others, without explanation" such as "the

ALJ does not make any mention of the finding that plaintiff had moderate limitations in his

ability to complete a normal workday and workweek without being interrupted by psychological

symptoms and to perform at a consistent pace without an unreasonable number of rest periods"

and finding that "[b]ecause there is not an account of his reasoning as to these opinions, there is

no way for the court to determine whether they should have been included in the RFC and

consequently affected the type of work that the ALJ determined plaintiff would be able to

perform").

These omissions and this failure to explain take on even greater significance when one

considers that the vocational expert, upon whose testimony the ALJ relied, R. 27−28, testified

that, *inter alia*, neither the jobs identified by him nor any other job in the competitive job market

would be available if the hypothetical individual had difficulty maintaining concentration during

the workday because of, *inter alia*, hearing voices, and could concentrate only six hours a day or if the hypothetical individual would be absent from work at least twice a month because of, *inter alia*, his depression. R 71–72. Accordingly, considering this omission and the ALJ's failure to explain this omission, this Court cannot conclude that substantial evidence supports the ALJ's RFC finding. *See Sanford v. Comm'r of Soc. Sec*., No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Accordingly, this Court concludes that remand of the matter for further consideration is appropriate even if, upon further examination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin*., No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[5]

---

[5] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's RFC the Court and does not consider those claims. Moreover, although not raised by Plaintiff, the Court notes that the ALJ also failed to include, or to address, Dr. Gilroy-Montgomery's limitation to only "superficial" interaction or its equivalent relating to the general public "and others" in the work

**VI.      CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  June 30, 2022                             *s/Norah McCann King*
                                         NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE

---

setting. R. 23, 26; *cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted).